APR 7 2026 PM 3:27
FILED - USDC - FLMD - TPA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JOHN WILLIAM LICCIONE,**
1497 Main St, Suite 196
Dunedin, Florida 34698,
*Petitioner,*

v.

Case No. 8:26-cv-**944 - WFJ-LSG**

**DONALD J. TRUMP,**
in his official capacity as President
of the United States,
*Respondent.*

## VERIFIED EMERGENCY PETITION FOR
## WRIT OF MANDAMUS AND TEMPORARY RESTRAINING ORDER
(EMERGENCY — FED. R. CIV. P. 65; 28 U.S.C. §§ 1331, 1361, 1651;
M.D. FLA. LOCAL RULE 6.01)

### NATURE OF THE PETITION

1. **This is an emergency of the highest constitutional magnitude.** At 8:06 a.m. Eastern Time on April 7, 2026, President Donald J. Trump publicly posted the following statement to his verified Truth Social account, @realDonaldTrump, directed at the Islamic Republic of Iran:



> *"A whole civilization will die tonight, never to be brought back again. I don't want that to happen, but it probably will. However, now that we have Complete and Total Regime Change, where different, smarter, and less radicalized minds prevail, maybe something revolutionarily wonderful can happen, WHO KNOWS? We will find out tonight, one of the most important moments in the long and complex history of the World. 47 years of extortion, corruption, and death, will finally end.*
>
> *God Bless the Great People of Iran!"*
>
> *— @realDonaldTrump, Truth Social, April 7, 2026, 8:06 AM EST*
>
> *(8,314 replies; 8.88k ReTruths; 37.5k Likes) (Exhibit A)*

2. **This post constitutes an express, public, presidential declaration that a military operation capable of killing an entire civilization — the Islamic Republic of Iran and its approximately 90 million people — is planned for tonight, April 7, 2026.** The post was made from the verified, official account of the President of the United States. It has not been walked back, clarified, or denied as of the time of this filing.

3. Petitioner John William Liccione, a United States Air Force and NSA veteran intelligence analyst, proceeding pro se, petitions this Court pursuant to 28 U.S.C. §§ 1331, 1361, and 1651 for an emergency writ of mandamus

compelling Respondent to refrain from ordering, authorizing, or facilitating any nuclear first strike or civilization-ending military action against Iran absent — as further defined herein — **(a)** an actual imminent nuclear attack upon the territory of the United States or its armed forces constituting an existential threat to the American homeland, or **(b)** a formal declaration of war or specific statutory authorization enacted by the United States Congress. No declaration of war exists. No statutory authorization exists. The conditions precedent to lawful nuclear use have not been satisfied. **The threatened action is unconstitutional on its face. It must be enjoined now, before tonight.**

## JURISDICTIONAL STATEMENT

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question arising under the Constitution of the United States, Article I, § 8; Article II; the Fifth Amendment; and the War Powers Resolution, 50 U.S.C. §§ 1541–1548); 28 U.S.C. § 1361 (mandamus against an officer of the United States); and 28 U.S.C. § 1651 (the All Writs Act, authorizing issuance of writs necessary or appropriate in aid of jurisdiction). Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(C) because Petitioner resides in this District.

5. Mandamus jurisdiction under § 1361 is appropriate because: (a) Petitioner has a clear right to the relief sought; (b) Respondent has a clear, non-discretionary duty under the Constitution and the War Powers Resolution not to initiate

offensive nuclear warfare against a civilian population without Congressional authorization; and (c) no other adequate means exists to obtain relief — the harm is irreversible by definition.

## PARTIES

6. **Petitioner John William Liccione** is a citizen of the United States residing at Dunedin, Florida 34698 — fewer than 30 miles from MacDill Air Force Base in Tampa, Florida, home to U.S. Central Command (CENTCOM) and U.S. Special Operations Command (SOCOM), the unified combatant commands directing all U.S. military operations against Iran under Operation Epic Fury. Petitioner is a United States Air Force and NSA-trained veteran intelligence analyst, cybersecurity executive, investigative journalist, and Democratic candidate for Congress in Florida's 13th Congressional District. Petitioner brings this action to vindicate his constitutionally protected interest in life, liberty, and the preservation of constitutional governance. MacDill Air Force Base, CENTCOM, and SOCOM are among the most credible and foreseeable retaliatory targets in the continental United States for Iranian or proxy counter-strikes in response to a nuclear attack. The threatened harm to Petitioner is immediate, concrete, and particularized.

7. **Respondent Donald J. Trump** is the President of the United States and Commander in Chief of the Armed Forces. He is sued solely in his official

capacity. He is the individual who made the public post described herein and who holds the authority to authorize or order nuclear weapons use.

## STATEMENT OF FACTS

### I. The Presidential Post of April 7, 2026.

8. At approximately 8:06 a.m. Eastern Time on April 7, 2026, Respondent posted the statement quoted above to his verified Truth Social account, @realDonaldTrump. A true and correct authenticated screenshot is attached as **Exhibit A** and incorporated herein.

9. The post was made from the verified, official account of the President of the United States. It is not disputed to be authentic.

10. The post explicitly references: (a) "A whole civilization will die tonight" — a direct reference to the anticipated destruction of the Iranian state and its approximately 90 million people; (b) "Complete and Total Regime Change" — an announcement of the intended political end-state; (c) "tonight" — establishing that the threatened action is imminent, within hours of this filing; (d) "one of the most important moments in the long and complex history of the World" — Respondent's own assessment of the catastrophic scale of the action; and (e) "47 years of extortion, corruption, and death, will finally end" — an unambiguous reference to the Islamic Republic of Iran, established in 1979.

11. The phrase "A whole civilization will die tonight" is not metaphorical. No conventional military strike — airstrikes, cruise missiles, or ground operations — kills a civilization in one night. The phrase is consistent with, and reasonably describes, the use of nuclear weapons capable of destroying Iranian population centers. Even if some other catastrophic action is contemplated, any action capable of killing a civilization overnight constitutes a massive offensive war requiring Congressional authorization.

12. The phrase "it probably will" — in response to Respondent's stated disinclination for a civilization to die — indicates Respondent has concluded that mass destruction of Iran is the most likely outcome of tonight's planned action, not an accidental byproduct.

13. As of the time of this filing, the United States Senate and House of Representatives have not voted on, debated, or been formally consulted regarding any military action against Iran that would result in regime change or the destruction of the Iranian state.

## II. The Absence of Any Constitutional Predicate for the Threatened Action.

14. No declaration of war against Iran has been enacted by the United States Congress pursuant to Article I, § 8, cl. 11 of the Constitution.

15. No Authorization for Use of Military Force specifically authorizing offensive nuclear or civilization-ending military operations against the Islamic Republic of Iran has been enacted.

### III. The United States Initiated This Conflict Without Congressional Authorization.

16. On February 28, 2026, the United States and Israel jointly launched "Operation Epic Fury" — a massive, surprise offensive military campaign against the Islamic Republic of Iran — without any Congressional declaration of war or statutory authorization, and while the United States and Iran were engaged in active nuclear negotiations. Iran had not attacked the United States, its territories, or its armed forces prior to February 28, 2026. The United States initiated this war.

17. In the course of Operation Epic Fury, the United States has fired more than 850 Tomahawk cruise missiles at Iranian targets and struck over 8,000 Iranian military targets using more than 20 distinct weapons systems. Over 3,700 people across the region have been killed. The conflict has closed the Strait of Hormuz.

18. On February 28, 2026 — the first day of Operation Epic Fury — a U.S. Tomahawk cruise missile struck the Shajareh Tayyebeh girls' elementary school in Minab, Hormozgan province, southern Iran. Independent investigations by NPR, The New York Times, CNN, The Washington Post, and CBC concluded the strike was carried out by a U.S. BGM/UGM-109 Tomahawk Land Attack Missile fired from a U.S. Navy vessel. At least 175 people were killed — the majority schoolgirls aged 7 to 12 — and 95 were wounded. A Pentagon probe confirmed in March 2026 that a U.S. missile was responsible. UN human rights experts characterized the strike as a potential war crime under the Rome Statute.

19. Iran has responded to Operation Epic Fury with counter-strikes on U.S. military bases in Bahrain (including 5th Fleet headquarters), Jordan, Kuwait, Qatar, and Saudi Arabia, and has launched ballistic missiles and drone barrages at Israel. Three U.S. service members have been killed and five injured, per CENTCOM. The U.S. Embassy in Kuwait was struck and closed.

20. **Iran's counter-strikes are legally retaliatory acts in response to a U.S.-initiated war, not independent predicate attacks authorizing nuclear escalation.** The critical legal distinction is dispositive: the United States attacked Iran without Congressional authorization on February 28, 2026. Iran's subsequent strikes on U.S. military installations are a direct response to U.S.-initiated aggression. A president who starts a war without Congressional

authorization cannot invoke the resulting retaliation as authorization for nuclear response. That construction would allow any president to manufacture unlimited nuclear war authority by initiating hostilities and pointing to the predictable response — rendering the Declare War Clause and the War Powers Resolution complete nullities.

21. Even setting aside the initiated-by-U.S. nature of this conflict, Iranian counter-strikes on U.S. military bases in Bahrain, Kuwait, Jordan, and Qatar do not constitute an attack upon "the territory of the United States" under 50 U.S.C. § 1541(c)(3), and categorically do not constitute an existential threat to the American homeland sufficient to justify nuclear retaliation against 90 million Iranian civilians.

22. No "national emergency created by attack upon the United States" within the meaning of 50 U.S.C. § 1541(c)(3) exists sufficient to authorize a nuclear first strike. To the extent any such emergency arguendo exists, proportionality under both the War Powers Resolution and the laws of armed conflict requires that the response be calibrated to the actual threat — not used to annihilate a civilian population.

23. No declaration of war against Iran has been enacted. No statutory authorization for nuclear use against Iran exists. The original initiation of hostilities on

February 28, 2026 itself lacked statutory authorization. Every subsequent escalation compounds the constitutional violation rather than curing it.

## IV. The Irreversible Nature of the Threatened Harm.

24. The destruction of "a whole civilization" is irreversible by definition. There is no judicial remedy adequate to address the deaths of tens of millions of people, the destruction of a nation-state, or the triggering of nuclear escalation. Injunctive relief before the act is the only possible remedy.

25. Senior U.S. military officers in the nuclear command chain are, as of this filing, presumably receiving or anticipating orders consistent with Respondent's public announcement. Those officers face a legal obligation — enforceable under the UCMJ and under their oaths to the Constitution — to refuse manifestly unlawful orders. This Court's writ would provide explicit federal judicial authority supporting that refusal.

26. The window for judicial intervention is closing. Based on Respondent's explicit statement that the action will occur "tonight," this Court has hours — not days — in which to act.

## STANDARD FOR WRIT OF MANDAMUS

27. A writ of mandamus under 28 U.S.C. § 1651 requires: (1) a clear and indisputable right to the relief sought; (2) a clear duty on the part of the respondent to perform the act in question; and (3) no other adequate means to attain the relief. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004). Mandamus is appropriate for "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Id.* Here, the question is the inverse: whether this Court may use its mandamus power to restrain a clear usurpation of constitutional authority by the Executive. The answer is yes. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).

28. All three mandamus elements are satisfied. Petitioner has a clear right — as a U.S. citizen, a veteran of the armed forces, and a resident proximate to a major military command installation — to be free from an unlawful nuclear war initiated without Congressional authorization. Respondent has a clear, non-discretionary duty under Article I, § 8 and the War Powers Resolution not to initiate such action. And no other adequate remedy exists: there is no appeal from nuclear annihilation. The extraordinary relief of mandamus is warranted precisely because the harm is extraordinary and irreversible.

Page 11 of 30

## ARGUMENT

### I. Respondent Has a Clear Duty Under Article I, § 8 Not to Initiate Offensive Nuclear War Without Congressional Authorization.

29. The Constitution vests in Congress the exclusive power to "declare War." U.S. Const. art. I, § 8, cl. 11. The Framers deliberately placed this power in the legislative branch to prevent exactly the scenario presented here: one person deciding to destroy another nation. *The Federalist No. 69* (Hamilton) (President has only "the direction of war when authorized or begun"). *Youngstown*, 343 U.S. at 637–38 (Jackson, J., concurring) (presidential power at its "lowest ebb" when acting contrary to Congressional will).

30. There is no plausible reading of Article I, § 8 that permits a single executive to destroy a civilization of 90 million people tonight without a congressional vote. Respondent's own public post announces precisely that intention. The constitutional violation is not theoretical — it is announced, imminent, and hours away.

31. Respondent's authority as Commander in Chief does not override the Declare War Clause. The President may direct military operations once war is lawfully declared or authorized; he may not initiate a new, civilization-ending offensive war of his own accord. The distinction between directing an authorized war and

Page 12 of 30

initiating an unauthorized one is the precise line the Framers drew. Respondent has announced his intention to obliterate that line tonight.

## II. The Threatened Action Violates the War Powers Resolution, 50 U.S.C. § 1541 et seq.

32. 50 U.S.C. § 1541(c) limits presidential use of force to three circumstances: (1) a declaration of war; (2) specific statutory authorization; or (3) a national emergency created by an attack upon the United States, its territories or possessions, or its armed forces. None of the three exists. The threatened action — destruction of the Iranian state, regime change, civilization-level casualties — cannot be shoehorned into any Article II provision. Section 1547(a) further provides that no authority may be inferred from any treaty or general law not specifically authorizing the introduction of U.S. Armed Forces into hostilities. It is precisely the kind of offensive war-of-choice the War Powers Resolution was enacted to prevent. *Dellums v. Bush*, 752 F. Supp. 1141, 1144–45 (D.D.C. 1990) (War Powers Resolution challenge justiciable; offensive war requires Congressional authorization).

## III. The Threatened Action Would Violate Jus Cogens International Law Incorporated into Federal Common Law.

33. The destruction of "a whole civilization" constitutes, at minimum, crimes against humanity and a grave breach of the United Nations Charter, to which

Page 13 of 30

the United States is a party. These norms constitute jus cogens — peremptory norms from which no derogation is permitted — and are incorporated into federal common law. *The Paquete Habana*, 175 U.S. 677, 700 (1900) ("international law is part of our law"). Presidential action in violation of jus cogens norms lacks any color of legal authority.

## IV. Petitioner Has No Other Adequate Remedy at Law.

34. Mandamus is warranted because no other adequate remedy exists. Once nuclear weapons are detonated, there is no appeal, no injunction, no damages award, and no declaratory judgment that can undo the harm. The dead cannot be restored. Cities cannot be unburned. Radiation cannot be unspread. Retaliation cannot be uninitiated. Post-hoc judicial review is not a remedy; it is an epitaph. This Court's jurisdiction to act exists now, before tonight, or it does not exist in any meaningful sense at all.

## IRREPARABLE HARM

35. Respondent has told us the harm in his own words: "A whole civilization will die tonight." He acknowledged it would "probably" happen. There is no more stark or irreversible harm cognizable in law. Millions of deaths, the destruction of a nation-state, nuclear escalation, and the incineration of MacDill Air Force

Base — CENTCOM headquarters, 30 miles from Petitioner's residence — none of these can be remedied after the fact. The irreparable harm factor is not close.

## BALANCE OF EQUITIES AND PUBLIC INTEREST

36. The government has no legitimate interest in conducting unconstitutional warfare. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). The public interest in preventing an unlawful, civilization-ending military action is, self-evidently, absolute. Respondent's own words establish that "the Great People of Iran" — 90 million human beings — face death tonight absent this Court's intervention. The balance of equities admits of no serious contest.

## WAIVER OF SECURITY REQUIREMENT

37. Pursuant to Fed. R. Civ. P. 65(c), Petitioner requests that this Court waive the security requirement. Petitioner proceeds pro se and without financial resources commensurate with the scope of the threatened harm. More fundamentally, the purpose of a security bond — to compensate a wrongfully restrained party — is inapplicable where the party restrained is the United States government and the action restrained is the alleged commission of a war crime and a constitutional violation. No bond amount could compensate the government for being temporarily restrained from committing an unlawful nuclear strike. Fed. R. Civ.

P. 65(c) provides the court "may" require security — the word is permissive, not mandatory — and courts exercise discretion to waive bond where the restrained party is the government, the harm is constitutional, and a bond would effectively deny meaningful relief. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (bond may be waived in public interest litigation); *Dellums v. Bush*, 752 F. Supp. 1141, 1152 (D.D.C. 1990) (no bond required in War Powers constitutional challenge).

## NOTICE TO MILITARY OFFICERS: THE LEGAL DUTY TO REFUSE THIS ORDER

38. Respondent's April 7, 2026 post constitutes public notice of a planned military order that would kill a civilization tonight. Senior military officers — including the Secretary of Defense, Chairman of the Joint Chiefs, Commander of U.S. Strategic Command, and all nuclear command-authority personnel — are hereby on notice of the following:

1. **An order to execute or facilitate an action designed to kill a civilization without Congressional authorization and absent an imminent nuclear attack on the United States homeland is not a lawful military order.**

2. **Under the UCMJ, Article 92 (10 U.S.C. § 892), liability attaches only to failure to obey lawful orders. This order is not lawful.**

Page 16 of 30

**3. The Nuremberg principle, codified in U.S. military law and the Department of Defense Law of War Manual, requires refusal of orders requiring the commission of war crimes. The killing of a civilization is a war crime.**

**4. Officers who refuse this order are acting in conformity with their oaths to the Constitution, the UCMJ, and the law of armed conflict. No lawful court-martial can result from the refusal of a manifestly unlawful order.**

**5. This Court's issuance of a writ of mandamus or temporary restraining order provides explicit federal judicial authority for such refusal — a binding federal court order that supersedes an unlawful presidential directive.**

*Respondent has told us what he intends. The question for every officer in the chain of command tonight is whether they will be complicit in it.*

## RELIEF REQUESTED

39. Petitioner respectfully requests that this Court immediately issue a Writ of Mandamus and Temporary Restraining Order:

    **A.** COMMANDING AND ENJOINING Respondent Donald J. Trump, President of the United States, and all officers, agents, servants, employees, and persons in the military chain of command acting in concert with him — including the Secretary of Defense, Chairman of the Joint Chiefs of Staff,

Commander of U.S. Strategic Command, and all nuclear command-authority and authentication personnel — from authorizing, ordering, directing, transmitting, authenticating, or in any way facilitating any military strike, nuclear or otherwise, against the Islamic Republic of Iran or any Iranian-affiliated force capable of causing mass civilian casualties, regime change, or destruction of the Iranian state, UNLESS AND UNTIL:

(1) An actual or verifiably imminent nuclear attack by Iran upon the territory of the United States or its armed forces, constituting an existential threat to the American homeland, has occurred or been independently verified by the bipartisan Congressional leadership designated to receive intelligence briefings under 50 U.S.C. § 3093 (the "Gang of Eight") — specifically, the Speaker of the House, the House Minority Leader, the Senate Majority Leader, the Senate Minority Leader, and the Chair and Ranking Member of each of the House Permanent Select Committee on Intelligence and the Senate Select Committee on Intelligence — and a majority of those eight officials have confirmed in writing that such an attack has occurred or is imminently underway; **OR**

(2)  The United States Congress has enacted, by appropriate vote, a formal declaration of war against Iran or specific statutory

authorization for the use of nuclear or civilization-ending military force against Iran.;

**B.** ORDERING immediate preservation of all executive branch communications, orders, planning documents, and authorizations related to any military action against Iran, including any nuclear option planning documents;

**C.** SCHEDULING an emergency hearing TODAY, April 7, 2026, for preliminary injunction, given that Respondent has publicly announced the action will occur tonight;

**D.** WAIVING the security requirement of Fed. R. Civ. P. 65(c) for the reasons stated above; and

**E.** GRANTING such other and further relief as this Court deems just and proper.

This Petition is brought in extremis. The President of the United States has publicly announced, this morning, that a civilization will die tonight. The federal courts are the last constitutional institution standing between that announcement and its execution. Petitioner implores this Court to act.

Respectfully submitted,

**John William Liccione**
Pro Se Petitioner
1497 Main St, Suite 196
Dunedin, Florida 34698
Telephone: (443) 698-8156
Email: jliccione@gmail.com

*Dated: April 7, 2026*

# CERTIFICATE OF NOTICE

Pursuant to Fed. R. Civ. P. 65(b)(1)(B) and M.D. Fla. Local Rule 6.01, Petitioner certifies as follows:

1. Notice to Respondent and the United States Department of Justice has not been provided prior to this filing. Petitioner respectfully certifies that providing advance notice to the Executive Branch of this emergency petition would be both futile and counterproductive, for the following reasons:

    (a) Respondent has publicly and unambiguously announced his intention to execute the threatened action tonight, April 7, 2026. There is no basis to believe that advance notice of this petition would cause Respondent to voluntarily refrain from the announced action.

    (b) The threatened action is to occur "tonight," within hours of this filing. Providing notice and awaiting a response from the Department of Justice — even on an emergency basis — risks the threatened action occurring before this Court can act.

    (c) Respondent, as the President of the United States, is constructively on notice of any constitutional and statutory limitations on his power. The law he is alleged to be violating is the Constitution of the United States and the

War Powers Resolution — neither of which requires private notice to be operative.

**(d)** The harm Petitioner seeks to prevent — the deaths of potentially tens of millions of people, including retaliatory strike casualties at and near MacDill Air Force Base, 30 miles from Petitioner's residence — is wholly irreversible. The equities overwhelmingly favor ex parte emergency relief.

2.  Petitioner commits to immediately serving a copy of this Petition, the proposed order, and all supporting papers upon the United States Attorney for the Middle District of Florida and upon the Attorney General of the United States via the Department of Justice Emergency Operations Center immediately upon issuance of any order by this Court, pursuant to Fed. R. Civ. P. 65(b)(2) and Local Rule 6.01(c).

John William Liccione
Pro Se Petitioner
*Dated: April 7, 2026*

## VERIFICATION

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

I, John William Liccione, pursuant to 28 U.S.C. § 1746, hereby declare and state as follows:

1. I am the Petitioner in the above-captioned matter. I submit this Verification pursuant to 28 U.S.C. § 1746 and Fed. R. Civ. P. 65(b)(1).

2. I am a citizen of the United States and my mailing address is 1497 Main St, Suite 196, Dunedin, Florida 34698. I am a veteran of the United States Air Force and a former National Security Agency (NSA) intelligence analyst. I have professional training in the assessment of national security threats, military operations, and intelligence analysis. My professional background provides me a basis to assess the credibility and nature of the threat described herein that the average citizen would not possess.

3. At approximately 9:00 a.m. Eastern Time on April 7, 2026, I personally observed the Truth Social post by @realDonaldTrump quoted in this Petition. I have attached a true and correct screenshot of that post as Exhibit A. The

post has not, to my knowledge, been retracted, modified, or denied as of the time of this filing.

4. The factual statements contained in this Petition regarding Operation Epic Fury, the Minab school strike, Iranian counter-strikes, U.S. casualties, and related matters are based upon my review of publicly available news reports from NPR, The New York Times, CNN, The Washington Post, the CBC, Stars and Stripes, Al Jazeera, Wikipedia, and U.S. Central Command (CENTCOM) public statements. I believe these facts to be true and accurate true and correct. Executed pursuant to 28 U.S.C. § 1746.

5. I reside fewer than 30 miles from MacDill Air Force Base in Tampa, Florida, which is home to U.S. Central Command (CENTCOM) and U.S. Special Operations Command (SOCOM). Based on my training and experience as an intelligence analyst, I am aware that CENTCOM is a primary military command target in any Iranian or Iranian-proxy retaliatory strike scenario. I have a direct, concrete, and particularized fear of injury arising from the threatened action described herein.

6. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct true and correct.

Page 24 of 30

Executed on April 7, 2026, at Dunedin, Florida.

**John William Liccione**
Pro Se Petitioner
1497 Main St, Suite 196
Dunedin, Florida 34698
Telephone: (443) 698-8156
Email: jliccione@gmail.com